IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAITAI FELICITY GARCIA,

    Plaintiff,

v.                                                                                                                                     No. 16-cv-1391 SMV

NANCY A. BERRYHILL,[1]
**Acting Commissioner of Social Security Administration,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 20] ("Motion"), filed on August 21, 2017. The Commissioner responded on October 3, 2017. [Doc. 22]. Plaintiff replied on November 8, 2017. [Doc. 23]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 12]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to meet her burden as the movant to show that the Administrative Law Judge ("ALJ") did not apply the correct legal standards or that her decision was not supported by substantial evidence. Accordingly, the Motion will be denied and the Commissioner's final decision affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

**Procedural Background**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on November 19, 2010. Tr. 10. She alleged a disability-onset date of September 30, 2009. *Id.* Her claims were denied initially, on reconsideration, and by an ALJ. *Id.* She appealed. The Appeals Council remanded the case for rehearing and a new decision. *Id.* ALJ Donna Montano held a second hearing on September 2, 2015, in Pasadena, California. *Id.* Plaintiff and her attorney appeared by videoconference from Santa Fe, New Mexico. *Id.*, *see* Tr. 34−74. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Thomas A. Grenier. Tr. 10, 69–73.

The ALJ issued her unfavorable decision on December 7, 2015. Tr. 26. She found that Plaintiff met the insured status requirements through September 30, 2013. Tr. 12. At step one she found that Plaintiff had not engaged in substantial gainful activity since the onset date of her alleged disability. Tr. 13. Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There she found that Plaintiff suffered from the following severe impairments: "a history of cardiomyopathy, anxiety and depression, alternatively diagnosed as bipolar disorder." *Id.* Further she found that Plaintiff's hypertension, temporomandibular joint disorder ("TMJ"), back pain, pain disorder, and migraine headaches were not severe. Tr. 15–17.

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 17–19. Because none of Plaintiff's

impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 19–24. The ALJ found that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b). [Plaintiff] can lift and/or carry twenty pounds occasionally, ten pounds frequently, stand and/or walk six hours and sit six hours in an eight-hour workday. [Plaintiff] is limited to the performance of simple repetitive tasks and working primarily with things rather than people. [Plaintiff] is unable to perform in-tandem tasks and she can have only superficial contact with coworkers.

Tr. 19. At step four the ALJ found that Plaintiff was not able to return to her past relevant work as a hotel clerk. Tr. 24. Proceeding to step five, the ALJ considered Plaintiff's RFC, age, education, and work experience. Tr. 25–26. She found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Plaintiff requested review from the Appeals Council a second time, but that request was denied on November 7, 2016. Tr. 1. Plaintiff timely filed the instant action on December 22, 2016. [Doc. 1].

## Analysis

Plaintiff fails to show reversible error in the ALJ's assessment of her RFC or in the ALJ's reliance on the VE's testimony. Remand is not warranted.

### I. Plaintiff fails to show reversible error in the evaluation of her cardiomyopathy.

Plaintiff challenges the ALJ's finding that her cardiomyopathy is resolved and/or asymptomatic. [Doc. 20] at 8 (citing Tr. 19). Plaintiff discusses portions of the medical record that show that her cardiomyopathy, in fact, still intermittently causes dyspnea with exertion and requires medication. *Id.* at 6–8 (citing Tr. 719, 725). The Court is not persuaded that the ALJ

erred. Even if Plaintiff continues to suffer dyspnea with exertion, the RFC accounts for it. The ALJ found that Plaintiff's history of cardiomyopathy was severe, and the RFC limited Plaintiff to light work, which is a limitation on exertion. Plaintiff fails to show any reversible error.

II. Plaintiff fails to show reversible error in the evaluation of<br>Dr. Hassemer's records and his statement that Plaintiff is "basically disabled."

Plaintiff takes issue with the ALJ's finding that Plaintiff's primary care physician, Donald Hassemer, M.D., did not perform any mental status examinations ("MSEs"). [Doc. 20] at 12–13. Plaintiff argues that Dr. Hassemer's notes show that he did perform MSEs or their equivalent. *Id.* Plaintiff fails to explain what difference this makes, and the Court sees no difference. The RFC limits Plaintiff to simple work and, further, restricts her contact with others. Tr. 19. Plaintiff fails to show how the RFC is inconsistent with Dr. Hassemer's records.

In a medical record dated January 24, 2011, Dr. Hassemer noted that Plaintiff "is basically disabled from anxiety, depression and chronic back pain." Tr. 671. Plaintiff argues that the ALJ's failure to "weigh" or "discuss" Dr. Hassemer's statement was "legal error." [Doc. 23] at 3; [Doc. 20] at 13. The Court does not agree.

The ALJ, in fact, did discuss Dr. Hassemer's statements. The ALJ stated that she had "careful[ly] consider[ed] the entire record[,]" Tr. 19, and the Court takes her at her word, *see Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009). Further, the ALJ explicitly discussed Dr. Hassemer's statements that Plaintiff was "disabled." The ALJ wrote:

> In January 2011, Dr. Hassemer noted that [Plaintiff] visited Espa[ñ]ola Medical Group for routine follow-up for severe anxiety and that he filled out her "disability form" [Tr. 671]. Dr. Hassemer did not perform a mental status examination at that time. It appears that the doctor merely recorded [Plaintiff]'s subjective

6

> complaints [Tr. 671]. While Dr. Hassemer filled out forms for [Plaintiff]'s "disability" to continue in March 2011 [Tr. 670], I again find no evidence that he performed a mental status examination or that he referred the claimant to a mental health specialist.

Tr. 21. This paragraph is adequate discussion and weighing of Dr. Hassemer's statements.

To the extent Plaintiff implies that the ALJ was required to apply the familiar treating physician analysis[4] to Dr. Hassemer's statements that Plaintiff was disabled, the Court disagrees.

Under the controlling regulations, the final responsibility for deciding the ultimate issue of whether a social security claimant is "disabled" or "unable to work" is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (internal quotation marks omitted). Consequently, an ALJ is not bound by a treating physician's opinion on the ultimate issue of disability, *id.*, and such an opinion is never entitled to controlling weight or special significance,

---

[4] Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). This is known as the "treating physician rule." *Langley*, 373 F.3d at 1119. The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).
     Treating physician opinions—in order to receive controlling weight—must be both supported by medical evidence and consistent with the record. If not, the opinions may not merit controlling weight but still must be given deference and must be weighed using the following six factors:
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

*see* Social Security Ruling ("SSR") 96-5p, 1996 SSR LEXIS 2, at *14–15, 1996 WL 374183, at *1, 2, 5.

> However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5p, 1996 SSR LEXIS 2 at *6, 1996 WL 374183, at *3; *see also id.*, 1996 SSR LEXIS 2 at *17, 1996 WL 374183, at *1 (stating that a social security decision "must explain the consideration given to a treating source's opinion(s)" on an issue reserved to the Commissioner).

Given this framework, Dr. Hassemer's statement that Plaintiff was "basically disabled" was not a "medical opinion," but rather was an opinion "on [an] issue[] reserved to the Commissioner." *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). Therefore, the opinion was not entitled to controlling weight or any special significance, and the ALJ was not required to evaluate it under the treating physician rule. Instead, under SSR 96-5p, the ALJ was required to evaluate all the evidence in the case record to determine the extent to which the opinion was supported by the record. She did so. Tr. 21, *see* Tr. 12–24. Plaintiff fails to meet her burden before this Court to show that anything more was required.

### III. Plaintiff fails to show reversible error in the evaluation of Dr. Gzaskow's opinion.

Dr. Gzaskow, a consultative psychiatrist, examined Plaintiff on March 30, 2011. Tr. 646–50. He diagnosed mood disorder secondary to general medical conditions with depression/anxiety ratio of 70/30; depressive disorder, not otherwise specified; general anxiety disorder, not otherwise specified; post-partum cardiomyopathy; rule out post-partum depression; and chronic insomnia. Tr. 649. He opined that:

> A. DIAGNOSES
>
> . . .
>
> B.
> 1. [Plaintiff] can relate to others but this is often compromised by her depressive isolation/withdrawal.
> 2. [Plaintiff] can understand directions *in a structured/supportive environment* but indicates she cannot follow through due to her physical and psychological problems as detailed above.
> 3. She can attend to simple tasks.
>
> C.
> [Plaintiff] has the ability to manage any funds (if granted).

*Id.* (emphasis added).

Plaintiff asks the Court to interpret Dr. Gzaskow's opinion that she "can understand directions in a structured/supportive environment" as an opinion that she is disabled. [Doc. 23] at 4 (This limitation "prevent[s] competitive work, and therefore require[s] a finding of disability."); [Doc. 20] at 14–15 (The doctor opined that Plaintiff can "function only under special conditions, which is an accommodation meaning she could not perform substantial gainful activity.").

9

In support of her argument, Plaintiff cites 20 C.F.R. § 404.1573(c). [Doc. 20] at 14–15; [Doc. 23] at 4. The regulation is one of several that discuss how past or current work experience may show whether someone is disabled. *See* 20 C.F.R. §§ 404.1571–76, 416-971–76. The regulation cited by Plaintiff describes work performed under "special conditions":

> (c) *If your work is done under special conditions.* The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which—
> (1) You required and received special assistance from other employees in performing your work;
> (2) You were allowed to work irregular hours or take frequent rest periods;
> (3) You were provided with special equipment or were assigned work especially suited to your impairment;
> (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
> (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
> (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. §§ 404.1573(c), 416.973(c). Plaintiff also cites to *Jackson v. Barnhart*, 60 F. App'x 255, 258 (10th Cir. 2003), which addresses the regulation. [Doc. 20] at 14–15; [Doc. 23] at 4. In *Jackson*, there was no dispute that the plaintiff's recent work experience had been in a "sheltered

10

workshop environment" as contemplated by the regulation, which he had secured through his state's Developmental Disabilities Services Division. 60 F. App'x at 258, 260. The record also contained numerous references to the plaintiff's cognitive, intellectual, and memory deficits. *Id.* at 258–60. The Tenth Circuit Court of Appeals reversed and remanded for adequate consideration of this evidence. *Id.* at 260.

In this case, Plaintiff interprets Dr. Gzaskow's comment (that Plaintiff "can understand directions in a structured/supportive environment") as an opinion that Plaintiff can "function only under special conditions," as contemplated by §§ 404.1573(c), 416.973(c). [Doc. 20] at 14–15; [Doc. 23] at 4. Plaintiff's interpretation is not reasonable.

First, there is nothing in the record to suggest that Plaintiff ever performed work under any type of "special conditions" as contemplated by the regulation. *See* Tr. 483, 499 (Plaintiff's Work Background forms), Tr. 42–43, 67–69 (Plaintiff's testimony regarding her past work). Second, Dr. Gzaskow did not employ the terms of art found in the regulation. For example, he did not say, "special conditions" or "sheltered workshop." *See* Tr. 646–50.

Third, to the extent that Dr. Gzaskow actually intended to opine that Plaintiff could only perform work under the "special conditions" contemplated by the regulation, such an opinion would not constitute a "true medical opinion" about the nature and severity of Plaintiff's mental limitations. *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (explaining that a "true medical opinion" is one that contains a doctor's "judgment about the nature and severity of [the claimant's] limitations, or any information about what activities [the claimant] could still perform," citing 20 C.F.R. § 404.1527(a)(2)). Rather, it would be a vocational opinion, which is

11

reserved for the Commissioner to make. *Id.*; *see Sullivan v. Colvin*, 519 Fed. App'x 985, 988 (10th Cir. 2013) (doctor's statement that claimant needed a "highly structured and supportive environment" was not a "true medical opinion" but instead, a vocational opinion, reserved to the Commissioner). Therefore, the Court is not persuaded that the ALJ erred in evaluating Dr. Gzaskow's opinion.[5]

### IV. Plaintiff fails to show reversible error in the evaluation of PA Weisenborn's statements.

On October 1, 2012, Plaintiff's primary care provider, Katherine Weisenborn, PA-C, drafted a letter "to document significant chronic health conditions that impair activities of daily living for [Plaintiff]." Tr. 713–14. Ms. Weisenborn's letter included various statements, but Plaintiff's argument focuses on three: (1) "[Plaintiff]'s health issues and their effect on potential employment do meet the definition of disability by New Mexico's Vocational Disability criteria," Tr. 713; (2) as to Plaintiff's cardiomyopathy: "strict dietary management and long term monitoring and management of blood pressure and heart condition, potential for arrhythmias. Limitations on physical activity and exertion[,]" Tr. 714; (3) Plaintiff's anxiety and depression were not well controlled. *Id.*

---

[5] The Court agrees with Defendant that the RFC assessment is largely consistent with Dr. Gzaskow's opinion. The ALJ rejected the opinion to the extent that it was inconsistent with the RFC. Tr. 20. The ALJ explained that Dr. Gzaskow's report was inconsistent with the RFC insofar as the notation that Plaintiff herself "indicate[d] she cannot follow through [with directions] due to her physical and psychological problems as detailed [in his report]." *Id.* The inconsistency was not about the doctor opining that Plaintiff required "special conditions" because the doctor did not so opine. Instead, the inconsistency was about Plaintiff herself claiming that she cannot follow directions. The ALJ did not err in rejecting Plaintiff's own claim that she cannot follow directions.

Plaintiff argues that remand is warranted here because, "contrary to law," the ALJ rejected these three statements. [Doc. 20] at 19 (citing SSR 06-03p); [Doc. 23] at 5. The Court is not persuaded.

The first statement with which Plaintiff takes issue—that Plaintiff meets the "definition of disability by New Mexico's Vocational Disability criteria"—is not a true medical opinion and does not require weighing under SSR 06-03p. *See* 20 C.F.R. §§ 404.1504, 416.904.[6] Plaintiff fails to show that the ALJ's treatment of this statement, Tr. 21, is inadequate in any way.

The second and third statements with which Plaintiff takes issue—that Plaintiff has exertional limitations resulting from her cardiomyopathy and that her anxiety and depression are not well-controlled—are consistent with the ALJ's decision and with the RFC in particular. In other words, the ALJ did not reject these statements. The ALJ found that Plaintiff's history of cardiomyopathy was severe at step two, and she limited Plaintiff to light work. Tr. 13, 19, 20. Similarly, she found that Plaintiff's anxiety and depression were severe at step two, and she limited Plaintiff to simple, repetitive tasks and only superficial contact with co-workers. Tr. 13, 19. It is possible that a different fact-finder could have reviewed Ms. Weisenborn's records and statements and drawn a different conclusion, perhaps one more favorable to Plaintiff. However, that is not the standard. This Court may not re-weigh the evidence.

---

[6] Although the regulation has been immaterially updated for claims filed on or after March 27, 2017, the regulation in effect at the time Plaintiff filed her claims, and also in effect at the time the ALJ made her decision, read:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. §§ 404.1504, 416.904 (2016).

The Court recognizes that Plaintiff has attempted to argue that the ALJ's rejection of these statements is actually legal error, rather than a lack of substantial evidence, but she does not develop the argument. To the extent she argues that the ALJ was required, but failed, to weigh these statements according to the regulatory factors at §§ 404.1527, 416.927, the Court does not agree. The ALJ adequately applied the regulatory factors in evaluating Ms. Weisenborn's statements. Tr. 19–20, 21. Plaintiff fails to show reversible error.

V. Plaintiff fails to show reversible error<br>in the evaluation of her pain disorders and back impairment.

At step two, the ALJ found that there was no objective medical evidence to support a finding of a *severe* pain disorder or a *severe* back impairment. Tr. 16–17. Plaintiff acknowledges that, even if the ALJ erred in finding these impairments non-severe at step two, the error would not be reversible. [Doc. 20] at 19. Instead, Plaintiff argues that the ALJ failed to include any restrictions in the RFC attributable to the pain disorder and back impairment. This lack of restrictions in the RFC, Plaintiff argues, was reversible error. The Court is not persuaded.

The ALJ explicitly assessed "the limitations imposed by [Plaintiff]'s medically determinable physical impairments[.]" Tr. 19. That is, the ALJ assessed the RFC based not only on Plaintiff's severe impairments, but also on her non-severe medically determinable impairments. The Court takes the ALJ at her word. *See Wall*, 561 F.3d at 1070. Besides, the RFC accounts for Plaintiff's pain disorder and back impairments by limiting her to light work. Nothing more was required. Plaintiff fails to show reversible error.

## VI. Plaintiff fails to show reversible error in the ALJ's reliance on the testimony of the VE.

Plaintiff offers two challenges to the ALJ's findings at step five. First, she argues that the step-five findings must be reversed because they are premised on an incorrect RFC. [Doc. 20] at 20; [Doc. 23] at 6–7. However, the Court has rejected Plaintiff's challenges to the RFC. Accordingly, her challenges to the RFC as applied at step five are also rejected.

Second, Plaintiff argues that there is not substantial evidence to support the ALJ's finding that Plaintiff could perform the duties of electronics worker because the corresponding Dictionary of Occupational Titles ("DOT") number cited by the ALJ (and the VE), 726.687-012, does not exist. [Doc. 20] at 21; [Doc. 23] at 6–7. The Court agrees with Defendant that this number appears to be an error because the DOT job of electronics worker is listed at DOT number 726.687-01**0** (rather than 726.687-01**2**). But even if the ALJ (and the VE) gave an incorrect DOT number for the job of electronics worker, the error would be immaterial because the ALJ (and the VE) also identified the job of housekeeper, which Plaintiff could perform. There are one million housekeeping jobs in the national economy. Tr. 25, 70. This job alone satisfies the Commissioner's step five burden. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995). Plaintiff fails to show reversible error at step five.

## **Conclusion**

Plaintiff fails to show that ALJ's findings are not supported by substantial evidence. She also fails to show that the ALJ failed to apply the correct legal standards. Accordingly, remand is not appropriate.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 20] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**